SANDRA PARK, Plaintiff-Appellee, v. GREGORY L. COLER, Director of Public Aid, *et al.*, Defendants-Appellants.

Fourth District   No. 4—85—0613

Opinion filed May 13, 1986.—Rehearing denied June 12, 1986.

Neil F. Hartigan, Attorney General, of Springfield (Roma Jones-Stewart, Solicitor General, and Karen Konieczny, Special Assistant Attorney General, of Chicago, of counsel), for appellants.

Valerie D. McWilliams, of Land of Lincoln Legal Assistance Foundation, Inc., of Champaign, for appellee.

JUSTICE GREEN delivered the opinion of the court:

The case concerns interplay between Federal legislation providing for grants to States to fund Aid to Families with Dependent Children programs (AFDC) and that creating Old Age, Survivors or Disability Insurance benefits (OASDI). The universal rule in determining the amount of AFDC benefits to which an eligible family is entitled is to subtract the amount of the family income from the projected needs of the family. By enactment of the Deficit Reduction Act of 1984 (DEFRA) (Pub. L. No. 98–369, 98 Stat. 1134 (1984)), Congress provided that, in order to obtain Federal grants, States must require that their AFDC programs include income of all parents and siblings living together in determining the family income.

Some families seeking AFDC include both children who receive OASDI benefits because of the death of one of their parents and children who do not receive such benefits. Federal legislation purports to make expenditure by the representative of a minor recipient of OASDI funds on behalf of any one other than the minor recipient to be a felony. (42 U.S.C. sec. 408(e) (1982).) Thus, in situations where the OASDI benefits to a particular minor are larger than the average portion of the AFDC benefits attributable to each of the other siblings in the family, the existence of such purportedly sheltered benefits for one minor can make the family ineligible for any benefits or reduce the portion attributable to each of the children to a very low level.

Effective October 1, 1984, acting in conformity with the Federal AFDC grant program, defendant Department of Public Aid (the De-

partment) duly enacted rules conforming the State's AFDC program to the Federal requirements (89 Ill. Admin. Code, ch. I, secs. 112.9, 112.126, 112.300 (1984)). Thereafter, plaintiff, Sandra Park, was ordered by Department agents to sign documents listing all of her children and their income in order to continue to receive AFDC benefits. Living in plaintiff's family with her were her young sons, Jason and Jerry, who had no source of income, and an older minor daughter, Natasha. As representative of Natasha, plaintiff received $439 per month in OASDI benefits to which Natasha had become entitled because of the death of her father, who was not the father of her brothers. At the time plaintiff was directed to give information concerning Natasha's income, the family was receiving AFDC benefits of $294 monthly. With the inclusion of Natasha's OASDI benefits in the family income, they would no longer be entitled to AFDC.

On November 2, 1984, acting apparently on the advice of counsel, plaintiff informed her Department caseworker that she would not sign the document which she had been directed to sign. The Department then notified her that her aid was being terminated for her failure to cooperate. On November 5, 1984, plaintiff filed written notice of appeal with the Department, and, subsequently, an administrative hearing was held in the Department's Vermilion County office. On December 17, 1984, the Department affirmed its decision to terminate aid. Plaintiff then filed a complaint for administrative review in the circuit court of Vermilion County. Ill. Rev. Stat. 1983, ch. 110, par. 3—104.

The circuit court of Vermilion County recognized the predicament plaintiff and her family would be in if they could not receive AFDC benefits and the OASDI income could only be used for the benefit of Natasha. It concluded that the appropriate remedy was to enjoin the Department from requiring plaintiff to execute the document request by the Department and issued such an injunction. Defendants, the Department and Gregory L. Coler, its director, have appealed.

No question has been raised as to whether an injunction is a proper disposition of an administrative appeal. In any event, we share the concern of the circuit court as to the complexities of the problems arising from DEFRA. We agree with the circuit court that if the OASDI benefits of Natasha are not available for use by the rest of the family, a legislative scheme whereby other members of the family are denied AFDC benefits because of income of Natasha, which cannot be applied to other members of the family, cannot stand. It would deprive the other members of the family of equal protection.

■ The only direct authorities called to our attention are the decisions of various Federal district courts, many of which have been

rendered since the decision of the circuit court. However, we deem the recent decision in *Cunningham v. Toan* (8th Cir. 1985), 762 F.2d 63, to have a close analogy to the case here. Based upon that decision and some of the Federal district court decisions, we hold that DEFRA made the OASDI benefits of siblings such as Natasha available for the common purpose of maintaining the family. Thus, requiring families whose members have those benefits to list those benefits in determining the income of the family does not put the siblings and other members of the family in any worse position, as far as total support is concerned, than would be the case if no member of the family had OASDI benefits. The DEFRA provisions to be discussed indicate a clear intent of Congress that reimbursement for AFDC payments made was not to be given to States that did not require the OASDI beneficiary benefits to be included in determining the income of AFDC recipient families.

For reasons we now explain in more detail, we reverse the decision of the circuit court thus leaving in force the Department's decision.

Section 2640 of Public Law 98—369 provided in part for the addition of subparagraph 602(a)(38), which states as follows:

"[A State plan for aid and services to needy families with children must]

(38) provide that in making the determination under paragraph (7) with respect to a dependent child and applying paragraph (8), the State agency shall (except as otherwise provided in this part) include—

(A) any parent of such child, and

(B) any brother or sister of such child, if such brother or sister meets the conditions described in clauses (1) and (2) of section 606(a) of this title, if such parent, brother, or sister is living in the same home as the dependent child, and any income of or available for such parent, brother, or sister shall be included in making such determination and applying such paragraph with respect to the family *(notwithstanding section 405(j) of this title*, in the case of benefits provided under subchapter II of this chapter)." (Emphasis added.) 42 U.S.C.A. sec. 602(a)(38) (West Supp. 1986).

Subparagraph 602(a)(38) seems to clearly indicate that States receiving AFDC grants must require that where dependent children such as Jason and Jerry have living with them a sister such as Natasha who has income available *to her*, that income must be included in determining the family income. The legislation then further pro-

vides that this requirement is "notwithstanding section 405(j)." Section 405(j) concerns OASDI benefits such as those received by Natasha and states:

"(j) Direct or indirect certification.

When it appears to the Secretary that the interest of an applicant entitled to a payment would be served thereby, certification of payment may be made, regardless of the legal competency or incompetency of the individual entitled thereto, either for direct payment to such applicant, or for his use and benefit to a relative or some other person." (42 U.S.C. sec. 405(j) (1982).)

When a minor beneficiary of OASDI benefits lives with at least one parent, one parent is usually designated as the representative for receipt of the payments for the minor. The combined effect of subparagraph 602(a)(38) and section 405(j) would seem to indicate that Natasha's OASDI benefits must be included in the family income even though the payments are made to a representative.

Neither subparagraph 602(a)(38) nor any other provision of DEFRA makes any direct reference to section 408 of OASDI which continues to state:

"Whoever—

\* \* \*

(e) having made application to receive payment under this subchapter for the use and benefit of another and having received such a payment, knowingly and wilfully converts such a payment, or any part thereof, to a use other than for the use and benefit of such other person; or

\* \* \*

shall be guilty of a felony and upon conviction thereof shall be fined not more than $5,000 or imprisoned for not more than five years, or both." 42 U.S.C. sec. 408 (1982).

As we have indicated, section 408(e) is the legislation which places the contention of the Department in serious doubt if it is still operative, post the enactment of DEFRA, to prohibit persons in the position of plaintiff from using one child's OASDI benefits for other children in the same household. Section 602(a)(38) speaks in terms of its requirements being applicable "notwithstanding section 405(j)" but makes no direct reference to any lessening of the restriction of section 408(e).

In *Cunningham*, pursuant to section 405(j), OASDI benefits were paid to a representative payee on behalf of a 15-year-old beneficiary who applied to the State for an AFDC grant for her dependent son.

The Eighth Circuit Court of Appeals had originally affirmed a district court order enjoining the Missouri Department of Social Services from automatically including the OASDI benefits in the determination of eligibility and grant amounts under AFDC. The Supreme Court vacated this judgment and remanded the case in light of DEFRA (*Toan v. Cunningham* (1985), 469 U.S. 810, 83 L. Ed. 2d 912, 105 S. Ct. 896 (mem.)). On remand, the Eighth Circuit modified the injunction, holding that OASDI benefits must be considered available income in making AFDC eligibility and grant determinations if the OASDI beneficiary, the dependent child, and the representative payee all live in the same household.

In its first opinion, the *Cunningham* court had noted that the mother's OASDI benefits should not be considered in the family income partly because section 408(e) exposed a representative to criminal liability for using the payments other than for the best interests of the beneficiary. Although the opinion on remand does not mention section 408(e), the court states that when "the OASDI beneficiary, the dependent child and the representative payee live in the same household, then the state must consider the OASDI benefits as income available when making AFDC eligibility and grant determinations." (*Cunningham v. Toan* (8th Cir. 1985), 762 F.2d 63, 66.) Thus, the *Cunningham* court must have concluded that DEFRA altered the application of section 408(e).

The instant case differs from *Cunningham* in that here at issue is the propriety of using OASDI benefits of one sibling for other siblings when the beneficiary sibling owes no duty of support to the other siblings. In *Cunningham*, the 15-year-old mother beneficiary did owe a duty of support to her child. However, the basic holding of *Cunningham* is that the "whereas" clause of section 602(a)(38) altered the effect of section 408(e) to permit a representative living in the same household with the OASDI beneficiary to use the benefits in such a way as to make those benefits subject to determination of the family income for AFDC eligibility and amount of support determination.

The Federal district court decisions supporting the position of IDPA are *Ardister v. Mansour* (W.D. Mich. 1986), 627 F. Supp. 641, *Huber v. Blinzinger* (N.D. Ind. 1985), 626 F. Supp. 30, and *Oliver v. Ledbetter* (N.D. Ga. 1985), 624 F. Supp. 325. These courts gave deference to the interpretation of the pertinent legislation by the Secretary of the United States Department of Health and Human Services treating OASDI benefits as available for use to support other members of the recipient child's dependent family. They also gave significance to the clear intent of DEFRA to reduce the expenses of welfare

payments.

In *White Horse v. Heckler* (D.S.D. 1985), 627 F. Supp. 848, *Gorrie v. Heckler* (D.C. Minn. 1985), 624 F. Supp. 85, and *Frazier v. Pingree* (M.D. Fla. 1985), 612 F. Supp. 345, the court held that section 408(e) was not changed by DEFRA and OASDI benefits of siblings of dependent children should not be included in family income for determination of eligibility for or amount of AFDC benefits. Those courts reasoned that the reference to section 405(j) in section 602(a)(38) was insufficient to infer any even partial repeal of section 408(e). The *White Horse* court also concluded that the result of requiring OASDI benefits to be used for the entire family unit was so unfair that Congress could not have so intended. It drew analogy to the pre-DEFRA case of *Owens v. Heckler* (8th Cir. 1985), 753 F.2d 675, which held that OASDI legislation and that concerning AFDC should be compromised in such a way as to give support to the intent of the legislation regarding both. The *Gorrie* court also relied on section 407(a) (42 U.S.C. sec. 407(a) (Supp. I 1983)), which makes OASDI benefits inalienable. It considered the legal requirement that the benefits be used for others to constitute an alienation of the benefits.

Plaintiff also contends, as did the *Gorrie* court, that section 407(a) prohibiting alienation of OASDI benefits prevents States from enacting legislation requiring their use for the benefit of siblings of the beneficiary. In *Hisquierdo v. Hisquierdo* (1979), 439 U.S. 572, 59 L. Ed. 1, 99 S. Ct. 802, the court held that benefits under the Railroad Retirement Act of 1974 (45 U.S.C. sec. 231 *et seq.* (Supp. I 1983)) were not subject to division in a divorce proceeding as community property because of an anti-attachment provision of the Act. We do not perceive that permitting use of the OASDI benefits for the use of the family after they are received to constitute alienation. However, even if such is the case, the "notwithstanding" clause would logically have the same effect on section 407(a) as it has in section 408(e).

We share the concern of various of the Federal district courts with the ambiguous and backhanded manner by which Congress apparently went about making OASDI benefits of one child available for use by all of the family so that income would be counted in determining the amount, if any, of AFDC benefits to which the family would be entitled. Nevertheless, we conclude that this was the intent of Congress. The decisions in *Cunningham, Ardister, Huber,* and *Oliver* so hold or indicate. We find the following statement made during Senate discussion of DEFRA to be significant:

> "This change will end the present practice whereby families exclude members with income in order to maximize family bene-

fits, and will ensure that the income of family members who live together and share expenses is recognized and counted as available to the family as a whole." S. Rep. No. 300, 98th Cong., 2d Sess. 165 (1983).

We must wonder what the effect of section 602(a)(38) would be in a situation where one of the siblings in an AFDC family was the beneficiary of a private trust fund and thus the recipient of money which the trustee could refuse to make available for other members of the family. However, that decision must await another day.

■ Plaintiff contends that even if the Department can validly require that Natasha's OASDI income be included in the family income for AFDC benefits, Department officials had no authority to require her to sign the document in issue here. Prior to plaintiff's being required to sign the document, the Department had issued a policy memorandum which directed Department personnel that eligible parents and siblings who were in the home and not included in the assistance unit had to be added to it and that the *caretaker relative was required to sign form 243* (the form tendered to plaintiff) *which was a request for assistance for an additional family member*. The memorandum further stated that assistance would be terminated if the caretaker relative refused to sign. We agree with plaintiff that this memo was insufficient to require plaintiff to sign the form or to render her grant subject to termination for failure to do so. The memorandum failed to meet the requirements for peremptory rulemaking as required by section 5.03 of the Illinois Administrative Procedure Act (Ill. Rev. Stat. 1983, ch. 127, par. 1005.03) because notice of the same was not filed with the Secretary of State or published in the Illinois Register. See *Senn Park Nursing Center v. Miller* (1984), 104 Ill. 2d 169, 470 N.E.2d 1029.

■ However, a rule stating "[e]ligible blood related siblings shall be included in the assistance unit" (8 Ill. Reg. sec. 112.300(b), at 19902 (1984)) had previously been properly filed and published in the Illinois Register. A previously properly adopted rule required recipients, as a condition of eligibility, to cooperate in the determination of eligibility by providing essential information and by availing themselves of all potential resources. (89 Ill. Admin. Code, ch. I, sec. 112.9 (1984).) Thus, properly enacted rules required that (1) plaintiff's daughter Natasha be listed as a member of plaintiff's family; and (2) in order to continue to be eligible for AFDC benefits, plaintiff was required to furnish essential information. That this information was to be furnished on a particular form was a detail for which no rule was required.

For the reasons stated, we reverse the judgment of the circuit court of Vermilion County and affirm and reinstate the order of the Department.

Circuit court reversed, Department decision reinstated.

WEBBER and SPITZ, JJ., concur.